OPINION
{¶ 1} Appellant, Sarah E. Hale, appeals her conviction in the Portage County Municipal Court for resisting arrest.
 {¶ 2} During the evening of October 26, 2002, appellant and her husband met with a group of friends and family at a restaurant in the City of Kent. That night, the downtown area was crowded with people celebrating annual Halloween festivities. The group intended to walk around the city and look at the various costumes. The members of the group remained at the restaurant for approximately thirty minutes whereupon they proceeded towards a downtown cellular phone store expecting to meet another friend. When they arrived at the cell phone shop, they were turned away and a fight broke out. During the fracas, appellant's brother, Travis Wargo ("Wargo") was pushed through a window. Two other members of appellant's group were also attacked. According to testimony, as many as twenty individuals were involved in the fight.
 {¶ 3} While patrolling the streets, a team of officers noticed the commotion. As they approached to break up the fight, Wargo approached Officer Richard Soika "swinging and throwing punches." Soika warned Wargo to calm down and stop fighting or he would be arrested. Wargo did not cease and Soika placed him under arrest.
 {¶ 4} As Wargo attempted to pull away from the officers, appellant seized Officer Paul Canfield's arm and "was screaming about arresting her brother." Canfield instructed appellant to stay back; appellant initially complied, but then grabbed Canfield's arm. Again, Canfield instructed appellant to "stay back" or risk arrest. Appellant then grabbed Canfield's arm a third time. At this point, the officers were able to handcuff Wargo; in the meantime, however, appellant climbed onto Canfield's back in an apparent final effort to disrupt the arrest. After taking control of Wargo, Canfield informed appellant she was under arrest. According to Officer Soika, appellant "decided she didn't want to be arrested and starts resisting her own arrest" by pulling away from the officer. Appellant was ultimately arrested and taken into custody.
 {¶ 5} On October 28, 2002, a criminal complaint was filed against appellant for resisting arrest. Appellant pleaded not guilty to the charges and the matter proceeded to a jury trial on May 21 and 22, 2003. On May 22, 2003, the jury returned a verdict of guilty. Appellant was sentenced to thirty days in jail and court costs. The jail time was suspended on the condition that appellant perform twenty-four hours of community service. The trial court suspended execution of the sentence pending the current appeal.
 {¶ 6} Appellant raises the following assignments of error for our review:
 {¶ 7} "[1.] The trial court committed prejudicial and reversible error when it overruled defendant's objections during the [s]tate's closing arguments wherein the [p]rosecutor made comment [sic] on the defense strategy and referenced his personal belief as to the defendant's guilt.
 {¶ 8} "[2.] The trial court abused its discretion and committed prejudicial error by allowing the prosecution to call a rebuttal witness to create the improper inference that the witness' testimony would have rebutted the testimony of defense witnesses.
 {¶ 9} "[3.] The verdict of the jury in the case sub judice is against the manifest weight of the evidence adduced at trial and is contrary to law."
 {¶ 10} We shall address appellant's assigned errors out of order.
 {¶ 11} In her third assignment of error, appellant contends the jury's verdict was against the manifest weight of the evidence. In determining whether a verdict is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers witness credibility and determines whether, in resolving evidential conflicts, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Santilli (April 25, 1997), 11th Dist. No. 96-A-0039, 1997 Ohio App. LEXIS 1682, at 4-5.
 {¶ 12} Appellant was charged and convicted of resisting arrest pursuant to R.C. 2921.33(A). That statute provides: "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." Force is defined as "any violence, compulsion or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). Moreover, a person acts recklessly when, with heedless indifference to the consequences, he or she perversely disregards a known risk that his or her conduct is likely to cause a certain result or is likely to be of a certain nature. R.C. 2901.22(C).
 {¶ 13} At trial, the state put forth testimonial evidence from two arresting officers and two rebuttal witnesses. The substantive evidence on which appellant's conviction was based came from the testimony of officers Canfield and Soika. Officer Canfield testified that he and his patrol team responded to the disturbance in question. In the process of breaking up the fight, Travis Wargo, appellant's brother, came toward Officer Soika throwing punches.[1] When Wargo did not cease aggressing, the officers attempted to place him under arrest. Wargo did not comply and at this point, appellant grabbed Canfield's arm yelling at him not to arrest her brother. Officer Canfield instructed appellant to step away several times which appellant ignored. Throughout this encounter, Canfield testified appellant was continuously grabbing his arm. Finally, Canfield advised appellant if she did not step away she would be arrested. She initially complied, but then returned and again grabbed Canfield's arm. While placing Wargo under arrest, Canfield testified that appellant jumped on his back.[2]
 {¶ 14} Officer Soika testified to similar facts and added that during his attempt to arrest Wargo, appellant also grabbed his arm. Soika stated that, while attempting to restrain Wargo, he observed appellant "go over" Canfield's back. According to Soika, appellant was told to stop resisting Wargo's arrest; however, appellant allegedly continued to keep the officer's from placing handcuffs on Wargo. Ultimately, appellant was placed under arrest for resisting Wargo's arrest; Soika testified that appellant then resisted her own arrest.
 {¶ 15} The defense presented testimony from four witnesses, including appellant, all of whom provided a substantially consistent rendition of the events; namely, appellant, her husband, brother, sister, and several friends went to downtown Kent in the interest of walking around and observing the Halloween costumes. After leaving the restaurant at which they all met, they walked to a cell phone store to find another friend. After arriving, a fight broke out during which Wargo was pushed through a window. Appellant and her sister removed Wargo from the shattered window and, in the commotion, appellant, Wargo, and their sister were knocked down by the arresting officers. Each witness testified the officers did not announce they were the police. However, when they looked up to see who knocked them down, they were arrested. The defense's witnesses consistently maintained they did nothing wrong; that they did not resist the officers, and the officers were unnecessarily rough.
 {¶ 16} Under the circumstances, the state presented sufficient evidence to support the jury's verdict; to wit, the jury properly found that appellant either recklessly or by force, resisted or interfered with her own arrest or the arrest of Travis Wargo. As such, an acquittal would have been proper only if the jury found appellant's witnesses more credible than those of the state.
 {¶ 17} The weight to be given to evidence and the credibility of witnesses are determinations to be made by the jury. State v.Babbitt (Sept. 30, 1999), 11th Dist. No. 98-A-0109, 1999 Ohio App. LEXIS 4638, at 9-10. It is clear that the jury chose to believe that the state's witnesses were more credible than those for the defense. However, when conflicting testimony is offered at trial, a conviction is not against the manifest weight merely because the jury chose to believe the prosecution's evidence.State v. Beesler, 11th Dist. No. 2002-A-0011, 2003-Ohio-2814, at ¶ 22. Under the circumstances, we will not substitute our own judgment on the credibility of witnesses for that of the jury. Therefore, appellant's third assignment of error is without merit.
 {¶ 18} In her second assignment of error, appellant argues that the state's use of Wargo as a rebuttal witness was prejudicial as the prosecutor's examination prompted Wargo to assert his Fifth Amendment right against self-incrimination.
 {¶ 19} The admission or exclusion of rebuttal testimony is within the sound discretion of the trial court. State v.Finnerty (1989), 45 Ohio St.3d 104, 109. A reviewing court will not disturb the trial court's decision absent an attitude which is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 20} In support of her second assignment of error, appellant relies upon State v. Dinsio (1964), 176 Ohio St. 460. In Dinsio, the state called the defendant's nephew as a witness for the state. The nephew had previously spoken freely with the authorities and signed a written statement relating to the defendant's activities on the night of the crime. At trial, the witness testified to his name and address, but refused to answer any further questions "on the grounds that it may tend to incriminate [him]." Id. at 469. Over objections, the trial court allowed the prosecutor to treat the nephew as a hostile witness and continue a "long, detailed and repetitious" examination of him regarding each line of his statement.
 {¶ 21} The court held:
 {¶ 22} "In a criminal case, where a claim of a witness that he can not be compelled to testify as a witness because of the privilege of immunity from selfincrimination is properly established, it is error prejudicial to the defendant for the court to permit counsel for the state, by continued questioning
of the witness, which questions go unanswered, to get before the jury innuendoes and inferences of facts, conditions and circumstances which the state could not get before the jury by direct testimony of the witness." Id. at syllabus. (Emphasis added).
 {¶ 23} Unlike the detailed, continuous questioning of the nephew in Dinsio, the state asked only three questions of Wargo:
 {¶ 24} "Q. Would you please state your name and spell your last name for the record?
 {¶ 25} "A. Travis M. Wargo. W-A-R-G-O.
 {¶ 26} "Q. And are you aware of an incident between the police and Miss Hale?
 {¶ 27} "A. I'd like to plead the Fifth on the question.
 {¶ 28} "Q. Are you going to plead the Fifth to all my questions?
 {¶ 29} "A. Yes."
 {¶ 30} Wargo was subsequently dismissed from the witness stand. The prosecutor neither discussed any facts relating to Wargo's alleged participation in the underlying crime nor belabored Wargo's assertion of his right against self-incrimination. Moreover, once the prosecutor determined Wargo would respond to all questions by asserting his Fifth Amendment right, he ceased questioning the witness.
 {¶ 31} In Dinsio, the court noted that the continuous inquiries by the prosecutor concerning the nephew's knowledge of and association with the defendant and the activities of the nephew on the day of the alleged criminal acts would certainly "tend to raise in the minds of the jurors an inference of a prior statement by the witness concerning these circumstances and activities and an inference that the witness participated in them with the defendant. This was prejudicial to the defendant." Id. at 467. Here, once the prosecutor determined that Wargo refused to testify, the examination stopped. Under these circumstances, there was no allusion to Wargo's knowledge of the events or his activities on the evening in question. In the context of this brief examination, we do not believe Wargo's assertion of his right against selfincrimination would prejudice appellant. Thus, appellant's second assignment of error is overruled.
 {¶ 32} In her first assignment of error, appellant argues the prosecutor made improper remarks during his closing argument which prejudicially affected the trial. In support, appellant notes the prosecution made the statement that the jury should not get "caught up in the [defense's] red herrings." Appellant also takes issue with the state's attempt to bolster the credibility of its witnesses by referencing their employment and training as police officers. Finally, appellant points out, at the end of his closing, the prosecutor expressed his personal belief as to the guilt of appellant. In appellant's view, these statements were both improper and prejudicial.
 {¶ 33} When addressing a jury, an attorney may not express his or her personal beliefs or opinions regarding the guilt or innocence of the accused or allude to matters unsupported by admissible evidence. State v. Lott (1990), 51 Ohio St.3d 160,166. Such limitations on an attorney's arguments to juries exist for two reasons: First, such argumentation invades the province of the jury and invites the jury to decide the case based upon the credibility and status of the attorney. State v. Draughn
(1992), 76 Ohio App.3d 664, 670. Second, a statement of an attorney's beliefs injects into the case irrelevant or inadmissible matter or facts not properly submitted into evidence. See, e.g., State v. Jones (Apr. 14, 1998), 4th Dist. No. 97CA648, 1998 Ohio App. LEXIS 1664, at 15. By offering his or her opinion, an attorney may augment the ostensible probative force of the evidence via his or her personal influence as well as his or her presumed superior knowledge of the facts and background of the case. United States v. Morris (C.A. 5 1970),568 F.2d 396, 401.
 {¶ 34} Such observations are particularly germane with respect to prosecuting attorneys: The prosecutor is not just a retained attorney; he or she is a public official occupying a highly respected office. Should the prosecutor be allowed to "testify" during closing argument, jurors could hear the "expert testimony" of a trusted officer of the court on issues potentially dispositive of the case. Id.
 {¶ 35} Nevertheless, the prosecution is entitled to a certain degree of latitude when making its closing argument. State v.McDade (June 26, 1998), 11th Dist. No. 96-L-197, 1998 Ohio App. LEXIS 2927, at 11. Thus, where challenged remarks are made, the prosecutor's comments must be taken in the context of the entire trial, not in isolation. State v. Kish, 11th Dist. No. 2001-L-014, 2002 Ohio 7130, at ¶ 53.
 {¶ 36} With the foregoing in mind, challenged remarks by a prosecuting attorney will rise to the level of misconduct only where the remarks are improper and such remarks prejudicially affect appellant's substantial rights. Lott, supra, at 165. A conviction shall not be reversed unless the misconduct was so grievous that the defendant was deprived a fair trial. Kish,
supra, at ¶ 50, citing State v. Smith, 87 Ohio St.3d 424, 442,2000-Ohio-450.
 {¶ 37} In the current matter, appellant first takes issue with the prosecutor's characterization of certain of the defense's arguments as "red herrings." During his closing argument, the prosecutor stated: "Let's not get caught up in the red herrings. * * *." The comment was objected to and overruled.
 {¶ 38} Appellant appears to contend that the prosecutor's use of the phrase "red herring" was tantamount to stating that her defense was misleading or false. A red herring is an argument used to draw one's attention away from issues or facts in question and sidetrack it to a different set of concerns. Thus understood, the term is not necessarily harmful and may be used as a rhetorical device to focus attention towards evidence de-emphasized or downplayed by an adversary.
 {¶ 39} Under the circumstances, appellant's witnesses testified to a version of events which differed substantially from that of the state's witnesses. Technically, the state's use of the phrase red herring served to point out these differences and emphasize evidence presented in support of its case. In this respect, the prosecutor's comment was not improper and appellant suffered no prejudice resulting from its use. See,State v. Smith (2000), 139 Ohio App.3d 398, 404.
 {¶ 40} Next, appellant challenges the prosecutor's attempt to bolster the credibility of the arresting officers by directing the jury's attention to their police training and S.W.A.T. team affiliation. The prosecutor alluded to the arresting officers' status as S.W.A.T. team members several times during his closing. In particular, the prosecutor noted:
 {¶ 41} "We're talking about officers who were selected for this detail, because they are all assigned to the Metro S.W.A.T. team. These are the officers that are assigned to come in when you have a hostage situation or —"
 {¶ 42} Defense counsel objected to this line of argument. The court sustained counsel's objection as the officers did not testify that they had any specific duties with respect to "hostage situations." Under the circumstances, the prosecutor's remarks were inappropriate as they incorporated information not in evidence. However, we do not see how this tangential, speculative remark regarding the S.W.A.T. team members' duties would affect the overall fairness of the trial. In the overall context of the case, the remarks were relatively benign: Whether a S.W.A.T. team member is called upon to assist in a hostage situation is logically irrelevant to his or her testimonial credibility. While we agree directing the jury's attention to facts not in evidence is inappropriate, we do not believe the remark was prejudicial to appellant's substantive rights.
 {¶ 43} Appellant further challenges the following remarks made during the state's closing:
 {¶ 44} "It comes down to whether or not you are going to accept the word of the law enforcement officers who were working that day, who were assigned to this duty, who knew what to expect or are you going to take the word of the people that, by their own admission were out looking for a good time just to watch and see the other costumes."
 {¶ 45} No objection was entered with respect to this comment and, therefore, any impropriety in its utterance before the jury is waived absent plain error. Plain error exists where, but for the error, the results of the trial would have been otherwise.State v. Caldwell (1992), 79 Ohio App.3d 667, 672. We do not believe the foregoing statement by the prosecutor rises to the level of plain error. Tacit in the statement is the assumption that the defense witnesses are not as credible as the officers because they were "looking for a good time" and not "on duty." The statement neither misrepresents evidence nor does it appear calculated to mislead the jury. Thus, we believe the comment was neither inappropriate nor prejudicial.
 {¶ 46} Finally, appellant challenges the following statement, to which her defense counsel objected:
 {¶ 47} "If you found she interfered with her arrest and her brother's arrest, we're still only doing one count here. That's all that's necessary. I believe firmly she interfered with her brother's arrest. I believe she interfered with her own arrest. * * * I believe she is guilty of resisting arrest, and I'd ask you to find her guilty."
 {¶ 48} As previously indicated, a prosecutor may not express his personal beliefs or opinions regarding the guilt of the accused. It is clear the prosecutor breached this fundamental tenet of advocacy rendering his statements improper.[3] We must thus determine whether the state's improper statements prejudiced appellant's substantive rights rendering the trial unfair.
 {¶ 49} A prosecutor must proceed with care when referencing a defendant's guilt in his or her closing argument. It is not impermissible for a prosecutor to comment upon evidence and suggest the conclusions to be drawn therefrom. State v. Draughn
(1992), 76 Ohio App.3d 664, 670. For instance, a prosecutor may say "I believe the evidence has shown the defendant's guilt;" however, he may not state "I believe the defendant is guilty."Caldwell, supra at 673.
 {¶ 50} Under the circumstances, the prosecutor expressly stated his belief that the defendant met the elements of the crime and concluded his summation with a statement as to defendant's guilt. This comment is not derivative of admitted evidence. Consequently, the prosecutor was drawing a conclusion on the merits of the evidence and thus unconstitutionally poaching on the sacred preserves of the factfinder.
 {¶ 51} Further, defendant's conviction rested heavily on an assessment of witness credibility. Where a prosecutor makes an express conclusion regarding defendant's guilt, he is effectively acting as a witness. As an advocate and servant of the law, the prosecutor is not permitted to testify on behalf of the state in a case he is prosecuting. Further, as noted above, a prosecutor who comments on a defendant's guilt acts to increase the persuasive force of his case simply by virtue of his position. In a case as closely contested as the matter sub judice, any improper remark which could be interpreted as testimony from the prosecutor could be considered dispositive of the outcome and therefore prejudicial.
 {¶ 52} Given the nature of the remark and its predictable negative impact, we believe that the prosecutor's improper remark regarding appellant's guilt prejudicially affected appellant's substantive rights.[4] Thus, appellant's first assignment of error has merit.
 {¶ 53} For the above stated reasons, appellant's second and third assignments of error are overruled; however, appellant's first assignment of error is sustained. The decision of the Portage County Municipal Court, Kent Division is hereby reversed and this matter is remanded for proceedings consistent with this opinion.
Ford, P.J., Nader, J., Ret., Eleventh Appellate District, sitting by assignment, concur.
[1] Officer Soika stated Wargo was not attempting to hit him or other officers; according to Soika, Wargo appeared to be charging at someone behind or beside the officers.
[2] Wargo was tried prior to the current matter; during his trial, both officers testified on behalf of the state. In the instant case, on cross-examination, the defense pointed out that the officers provided no prior testimony that appellant jumped on Canfield's back. However, during appellant's trial, it was revealed that Officer Stoika's incident report noted how appellant "climbed" upon Officer Canfield's back during the arrest of Wargo.
[3] See, e.g., DR 7-106(C) which provides: "(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:" * * * "(4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, as to the guilt or innocence of an accused; * * *"
[4] It is worth noting that the court gave the following jury instructions:
"Evidence does not include Counsel's opening statements or the closing arguments of Counsel. Opening statements and closing arguments of Counsel are only designed to assist you. They are not evidence."
However, no specific curative instruction was given after counsel's objection to the state's statement of belief regarding appellant's guilty; in fact, the objection was overruled. Although the foregoing generic instruction palliated the impact of the prosecutor's remarks, we do not believe it sufficed to neutralize the prejudicial impact it had at the time of its utterance.