[Cite as *State v. Brumley*, 2017-Ohio-8803.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-P-0071** |
| DRESHON G. BRUMLEY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2016 CR 00457.

Judgment: Affirmed.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Shubhra Agarwal,* 3732 Fishcreek Road, #288, Stow, OH 44224 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, Dreshon G. Brumley, appeals from the judgment of the Portage County Court of Common Pleas convicting him, after trial by jury, of kidnapping, felonious assault, and domestic violence. At issue is whether appellant's convictions are supported by sufficient evidence, the weight of the evidence, and whether his convictions for felonious assault and domestic violence should have been merged. We affirm the trial court's judgment.

{¶2} On Friday, June 28, 2016, Katrina Hamilton, appellant's then-fiancé, was laying in bed with the couple's two daughters when appellant stormed in, grabbed the woman by the arm and dragged her into a separate bedroom. Appellant was suspicious Ms. Hamilton was romantically involved with a mutual friend of the couple, Tyrice Lattrel. Once in the next room, appellant threw Ms. Hamilton onto the bed, straddled her and started slapping her and choking her with both hands. During the attack, appellant swore at Ms. Hamilton, calling her a whore, a slut, and a bitch. After the assault, appellant left the room to speak with Mr. Lattrel, who was apparently waiting somewhere in the downstairs area. Appellant returned shortly thereafter and slammed Ms. Hamilton against the wall and again commenced choking her again. Appellant eventually stopped and the couple went downstairs and began talking.

{¶3} While downstairs, appellant had various questions for Ms. Hamilton and, during the discussion, appellant became agitated and violent again. He initially punched her in the ribs with a closed fist. Ms. Hamilton stated she was unable to breath after the strike and believed she suffered a broken rib from the blow. Appellant then grabbed her and threw her to the ground, held her shoulders, and slammed her head into the floor several times. After this incident, appellant calmed and the couple retreated to bed. Ms. Hamilton testified she did not call police because she believed the violence was over and did not want appellant to get in trouble with authorities.

{¶4} On Saturday, June 29, 2016, the couple, with their children, went to the home of Ms. Hamilton's mother. Ms. Hamilton advised her mother about her rib injury, but did not disclose the assault. When they returned home, appellant again brought up Mr. Lattrel. The tension escalated and appellant threw Ms. Hamilton to the ground,

2

mounted her, and began slapping her head. Appellant additionally slammed her head into the floor two or three times and punched her in the injured rib again.

{¶5} Over the next several days, Ms. Hamilton sustained a series of repetitive beatings, some of which were severe. Because, however, the indictment charged appellant only with crimes that occurred on Friday, June 28, 2016, it is unnecessary to discuss the nature of the attacks.

{¶6} On Tuesday, July 2, 2016, appellant left the home to umpire another game. While he was out, Mr. Lattrel paid Ms. Hamilton a visit. He indicated he wished to fight appellant. Ms. Hamilton slammed the door and the man left. Upon appellant's return home, Ms. Hamilton disclosed the visit. Appellant again became violent, threatening to kill her and repeatedly advising her "lies are worth your life." Fearing for her life, Ms. Hamilton took an empty pizza box out into the garage as though she was going to dispose of the item. She then began to run down the street barefoot. She found help at a local mechanic's shop.

{¶7} Police were ultimately called and Ms. Hamilton was taken to the hospital where, after various tests, she learned she suffered a fracture to the left 10th rib and a partially collapsed lung. She also had deep tissue bruising on her forehead and face; multiple scratches on the front, side and back of her neck; significant bruising to her arms; and other superficial injuries to various parts of her body.

{¶8} Appellant was indicted on one count of kidnapping, in violation of R.C. 2905.01(A)(3), a felony of the first degree; one count of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree; and two counts of domestic violence, in violation of R.C. 2919.25, one, a felony of the fourth degree, the other, a

felony of the fifth degree. Appellant pleaded not guilty. The matter proceeded to jury trial after which the jury returned verdicts of guilty on the charges of kidnapping, felonious assault, and felony-four domestic violence. Appellant was acquitted of the last domestic violence charge. Appellant was sentenced to 10-years imprisonment for the kidnapping charge; seven years imprisonment for the felonious assault charge; and 18 months imprisonment for the domestic violence charge. Each sentence was ordered to be served concurrently with one another. This appeal follows.

{¶9} Appellant assigns four errors for our review. His first two assignments of error provide:

{¶10} "[1.] The trial court committed reversible error when it overruled Mr. Brumley's Crim.R. 29(A) motion for acquittal because the evidence was insufficient to support a conviction for kidnapping.

{¶11} "[2.] Mr. Brumley's conviction for [kidnapping] was against the manifest weight of the evidence."

{¶12} Under these assigned errors, appellant challenges the weight and sufficiency of the evidence supporting his kidnapping conviction. He does not take issue with the evidence in support of his felonious assault or domestic violence convictions. Thus, we need only address the merits of the kidnapping conviction.

{¶13} A "sufficiency" argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense. *State v. Windle,* 11th Dist. Lake No.2010-L-0033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury

4

could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Troisi,* 179 Ohio App.3d 326, 2008-Ohio-6062 ¶9 (11th Dist.).

**{¶14}** In contrast, a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee,* 11th Dist. Lake No. 93-L-082, 1994 WL 738452 *14-*15 (Dec. 23, 1994).

**{¶15}** The indictment alleged that, on June 28, 2016, appellant committed kidnapping, in violation of R.C. 2905.01(A)(3). The statute provides:

**{¶16}** (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

**{¶17}** * * *

**{¶18}** (3) To terrorize, or to inflict serious physical harm on the victim or another.

**{¶19}** Because "terrorize" is not defined by the Revised Code, Ohio courts have defined it according to its common usage, which is "to fill with terror or anxiety." *State v. Eggleston,* 11th Dist. Lake No.2008-L-047, 2008-Ohio-6880, ¶30, fn.1

**{¶20}** The evidence demonstrated that on Friday, June 28, 2016, appellant grabbed Ms. Hamilton out of her bed and dragged her into another room. He threw her onto a different bed, held her down, and began choking and slapping her. As he straddled and struck Ms. Hamilton, appellant released a stream of invective, declaring

her a whore, a slut, and a bitch. The foregoing demonstrates a reasonable jury could find, beyond a reasonable doubt, that appellant both removed Ms. Hamilton from the place she was resting *as well as* restrained her liberty for the purpose of, at the least, filling her with terror and anxiety (i.e., straddling, slapping, choking, and censuring her with abusive language would be sufficient to cause a reasonable person to feel "terrorized"). There was therefore sufficient evidence to support the kidnapping conviction.

{¶21} Notwithstanding the foregoing, appellant argues Ms. Hamilton never attempted to call the police and remained with appellant over the course of additional days without attempting to leave their residence. Further, appellant points out Ms. Hamilton never sought help from neighbors or family. Moreover, he emphasizes that each night, after being beaten, choked, and berated, Ms. Hamilton still went to bed with appellant, as though nothing happened. In his view, this conduct calls Ms. Hamilton's credibility into question and militates against his kidnapping conviction. We do not agree.

{¶22} Ms. Hamilton explained that she remained in the residence, without calling the police or exposing appellant, because, each night, she believed appellant had finally ceased being upset and she did not wish to get him into trouble. These explanations are reasonable and do not undermine Ms. Hamilton's credibility. Accordingly, Ms. Hamilton's post-beating conduct does not militate heavily against his conviction for kidnapping. Appellant's conviction for kidnapping is therefore consistent with the weight of the evidence.

{¶23} Appellant's first and second assignments of error lack merit.

**{¶24}** Appellant's third and fourth assigned errors provide:

**{¶25}** "[3.] The trial court committed reversible error and plain error when it sentenced Mr. Brumley for felonious assault and domestic violence as they were allied offenses of similar import subject to merger under R.C. 2941.25.

**{¶26}** "[4.] Mr. Brumley was denied his constitutional right to effective assistance of counsel at trial when his trial counsel failed to argue that felonious assault and domestic violence were allied offenses of similar import subject to merger under R.C. 2941.25."

**{¶27}** Under his third assignment of error, appellant argues the trial court erred when it failed to merge the felonious assault and domestic violence counts because they are allied offenses of similar import. Whether offenses constitute allied offenses of similar import subject to merger under R.C. 2941.25 is a question of law that appellate courts review de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶26-28. The burden is on the defendant to establish his entitlement to merger. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, ¶18

**{¶28}** Under his fourth assignment of error, appellant asserts trial counsel was ineffective for failing to object to the lack of merger. As such, he acknowledges the plain error standard of review applies. Plain error does not occur unless, but for some "obvious" error committed by the trial court, the outcome of the trial would have been different. *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶31. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶29}** "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors - the conduct, the animus, and the import." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, paragraph one of the syllabus. If any of the following are true, a defendant's convictions do not merge and he or she may be sentenced for multiple offenses: "(1) the offenses are dissimilar in import or significance-in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Id.* at ¶25.

**{¶30}** Felonious assault, pursuant to R.C. 2903.11(A)(1), provides that "[no] person shall knowingly * * * [c]ause serious physical harm to another." Serious physical harm is defined as, inter alia, "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(e). Domestic violence, pursuant to R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." "Physical harm to persons means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

**{¶31}** Finally, to find appellant guilty of either offense, it was required to determine he acted knowingly. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

8

{¶32} The evidence demonstrated that, after the kidnapping was complete, appellant went downstairs to further discuss matters with Mr. Latrell. He returned upstairs, located Ms. Hamilton and proceeded to slam her head into a wall and again choke her. During this attack, appellant repeatedly accused her of lying to him and the attack lasted approximately 15 minutes. She testified she sustained scratches on her neck from this choking incident.

{¶33} Later that evening, the couple returned downstairs together where they continued to discuss appellant's allegations. Ms. Hamilton testified she made a statement that "set [appellant] off" and he punched her in the ribs. The evidence ultimately revealed that Ms. Hamilton suffered a broken rib and was in excruciating pain as a result of the injury. In fact, she testified that, as a result of the blow, she could not breath, "[i]t took [her] breath away and it hurt to move or do anything after that. [She] believed that [her] rib was broken immediately."

{¶34} The evidence shows that the first assault after the kidnapping was sufficient to meet the elements of domestic violence, i.e., appellant knowingly caused physical harm (scratches to her neck from being choked) to Ms. Hamilton, a household member. The second assault, the punch, was sufficient to meet the elements of felonious assault, i.e., appellant knowingly caused Ms. Hamilton to suffer acute pain of such duration as to result in substantial suffering. Each of these incidents were discrete and separate, causing separate identifiable harm, and accomplished with a separate animus. Thus, the crimes were not allied offenses of similar import and the trial court did not err in failing to conduct a merger analysis.

{¶35} Because we discern no error, there is no plain error. Similarly, counsel's performance was not deficient for failing to request the court to merge the separate counts.

{¶36} Appellant's third and fourth assignments of error lack merit.

{¶37} For the reasons discussed in this opinion, the judgment of the Portage County Court of Common Pleas is affirmed.

DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.