[Cite as *State v. Harris*, 2018-Ohio-1329.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No.    17CA011109 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| LEONDRE HARRIS | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.    16CR094756 |

DECISION AND JOURNAL ENTRY

Dated: April 9, 2018

TEODOSIO, Judge.

{¶1}  Appellant, Leondre Harris, appeals from his convictions for kidnapping and abduction in the Lorain County Court of Common Pleas.  This Court affirms.

I.

{¶2}  One night in August of 2016, Mr. Harris and his girlfriend ("A.W.") were staying at the Days Inn in Elyria to celebrate their friend's birthday.  There was testimony at trial from several witnesses that Mr. Harris repeatedly referred to A.W. throughout the evening as his wife and noted that she was pregnant.  A group of six workers from Indiana were also staying at the same hotel that night in two separate rooms, and they left their rooms "latched open" so they could enter and exit each room freely without being locked out.  At one point, A.W. accidentally walked into one of the workers' rooms.  She apologized, but asked if they wanted to share her bottle of vodka.  They politely declined and she left.

{¶3}   Later, some of the workers talked to Mr. Harris and A.W. in the parking lot while smoking and drinking together.  Mr. Harris and A.W. soon began to bicker and argue with each other, and Mr. Harris got in his car to leave.  A.W. attempted to get into the car as well, but Mr. Harris locked the doors and drove off without her.  At some point, A.W. also left the parking lot by herself.

{¶4}   Mr. Harris later returned to the hotel, confronted some workers in the parking lot, and demanded their room key so he could make sure A.W. was not in their room.  The workers refused to hand over their room key and Mr. Harris left the area again.  The workers encountered A.W. again and she appeared to be shaken, scared, and concerned for her safety.  The men allowed her to stay in one of their rooms to keep her safe and calm while she called friends for a ride and a place to stay.

{¶5}   Mr. Harris returned to the hotel once again and knocked on both of the workers' hotel doors, demanding that A.W. come outside.  In the second room, the workers and A.W. all remained silent and did not open the door, but instead called 911.  Mr. Harris began either banging loudly on the door or trying to kick it in, but he also decided to call 911.  The police soon arrived, spoke to everyone involved, and de-escalated the situation.  They determined that A.W. wished to stay with the workers and did not want to be with Mr. Harris.  Mr. Harris apparently left the area once the police told him he was no longer welcome at the Days Inn that night.

{¶6}   After the police left, about a half hour passed before Mr. Harris came back to the hotel with more friends.  Mr. Harris encountered A.W. somewhere in the hotel, and forcefully pulled her out of the hotel and into a parked minivan.  Some of the workers witnessed Mr. Harris "dragging" A.W. down the hallway.  One of the workers called 911 again, while some of the

other men went out to the parking lot and were able to free A.W. from the minivan. The police soon arrived and Mr. Harris was arrested.

{¶7} Mr. Harris waived his right to a jury trial and instead proceeded to a bench trial in this matter. Based on the lack of evidence presented regarding whether Mr. Harris actually shared a residence with A.W., the trial court granted Mr. Harris' Crim.R. 29 motion for acquittal as to one count of felony-five domestic violence. Based on the dismissal of the felony domestic violence charge and thus the lack of evidence presented regarding whether Mr. Harris committed these acts to facilitate the commission of a felony, the trial court also granted Mr. Harris' Crim.R. 29 motion for acquittal as to one count of kidnapping. The court denied Mr. Harris' Crim.R. 29 motion for acquittal as to the three remaining counts. After deliberation, the trial court found Mr. Harris guilty of one count of kidnapping and two counts of abduction. At sentencing, the two abduction counts merged into the kidnapping count and the trial court sentenced Mr. Harris to five years in prison for kidnapping. Because Mr. Harris had previously been convicted of a felony-one aggravated robbery in Cuyahoga County, the trial court ordered the five-year sentence in this case to be mandatory prison time.

{¶8} Mr. Harris now appeals from his convictions and raises two assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE FINDING OF "GUILTY" AGAINST DEFENDANT-APPELLANT WITH RESPECT TO COUNTS II, III AND IV OF THE INDICTMENT, THE KIDNAPPING AND TWO ABDUCTION CHARGES, THOSE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶9}** In his first assignment of error, Mr. Harris argues that his convictions were based on insufficient evidence and against the manifest weight of the evidence. We disagree with both propositions.

Sufficiency of the Evidence

**{¶10}** "A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo." *State v. Spear*, 9th Dist. Summit No. 28181, 2017-Ohio-169, ¶ 6, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

**{¶11}** Mr. Harris was convicted of kidnapping under R.C. 2905.01(A), which states in relevant part: "No person, by force * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * (3) To terrorize, or to inflict serious physical harm on the victim * * *." "'Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's

specific intention to engage in conduct of that nature." R.C. 2901.22(A). "Terrorize" is not defined in the Revised Code, but Ohio courts have defined it according to its common usage, which is "'to fill with terror or anxiety.'" *State v. Suggs*, 9th Dist. Summit Nos. 27812, 27865, & 27866, 2016-Ohio-5692, ¶ 16, quoting *State v. Chasteen*, 12th Dist. Butler No. CA2007-12-308, 2009-Ohio-1163, ¶ 21, quoting *State v. Eggleston*, 11th Dist. Lake No. 2008-L-047, 2008-Ohio-6880, ¶ 30, fn. 1.

{¶12} Mr. Harris was also convicted of abduction under R.C. 2905.02(A), which states in relevant part: "No person, without privilege to do so, shall knowingly * * * (1) [b]y force * * *, remove another from the place where the other person is found [or] (2) [b]y force * * *, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear * * *." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶13} As to his kidnapping conviction, Mr. Harris argues that the State did not introduce any evidence of a purpose to terrorize or to inflict serious physical harm, as there was no evidence of physical harm and A.W. stood by Mr. Harris' vehicle after the second disturbance. Mr. Harris claims that he simply wanted A.W. to leave the hotel with him and their friend, while she wanted to remain and "party" with the workers. As to his abduction convictions, he argues that the State did not introduce any evidence of force or threat, as the surveillance video does not show Mr. Harris dragging A.W. away, but instead only shows Mr. Harris with his arm around A.W. as they walked into the parking lot together. He further argues that there was no evidence of physical harm, as the police officers who responded to the scene did not testify that they observed any injuries on A.W.

{¶14} Upon review of the record, we conclude that the State presented sufficient evidence at trial, if believed, to establish that Mr. Harris committed the offenses of kidnapping and abduction. One of the workers ("David") testified that when some of the men were in the parking lot smoking and drinking with Mr. Harris and A.W., Mr. Harris made some crude comments about how he would make A.W. perform oral sex on all of the men and how he would make them all pay to have sexual intercourse with her. David testified that these comments upset A.W. and she began bickering and arguing with Mr. Harris. Mr. Harris got into his vehicle and A.W. tried to join him, but he locked the doors and drove off without her. The workers' supervisor ("Matthew") testified that, on his way back to his room, he encountered A.W., who was scared, nervous, worried, twitching, shaking, and crying hysterically. Matthew offered to let her stay in his room or to drive her to wherever she would like to go. Another worker ("Aaron") testified that when A.W. arrived at the hotel room, she was scared and crying with makeup running down her face. Aaron testified that "she was like, please hide me, please hide me, he's going to kill me this time." He also testified that A.W. said she was scared and "not feeling safe." Matthew testified that, once inside the room, A.W. would pace back and forth, then sit up against the door, then look out the window. Aaron testified that A.W. was scared, "freaked out," and "looked like she was fearing for her life."

{¶15} Several workers testified that when Mr. Harris returned again to knock on the doors to their rooms and demand that A.W. come outside, everyone in the second room remained quiet and did not answer him. Matthew called 911 and Aaron testified that Mr. Harris began "kicking the crap out of the door." The 911 call was entered into evidence at trial. Loud banging noises can be heard in the background and are acknowledged by both Matthew and the 911 dispatcher in the call. The police soon arrived and Officer Joseph Figula Jr. testified that

A.W. was shaking, frightened, and extremely nervous. A.W. indicated to the officer that she did not want to go with Mr. Harris and wished to stay with the workers instead. Officer Figula told Mr. Harris and his friend that A.W. wanted to be left alone and she did not want to be bothered by them anymore. After speaking to hotel staff, he also informed Mr. Harris and his friend that they were no longer welcome at the Days Inn that night and they needed to leave.

{¶16} When Mr. Harris and his friends returned to the Days Inn again later that night, the workers soon became aware that Mr. Harris had found A.W. Matthew testified that while he was trying to call 911 again, he saw Mr. Harris dragging A.W. out of one of the hotel entrances and into the parking lot. He further testified that A.W. was struggling, wiggling, panicking, and trying to get away, but she could not move very much because Mr. Harris had a hold of her hair. The 911 call was played at trial and entered into evidence. Matthew testified that the woman heard screaming in the background of the phone call is A.W. Aaron and David also testified that they saw Mr. Harris dragging A.W. Aaron testified that he could hear A.W. yelling, "[S]top, stop, stop, you're hurting me, stop" and "[D]on't, don't do this, don't do this." David testified that Mr. Harris was "basically manhandling her" and was forcing her to go against her will.

{¶17} A surveillance video from a hallway inside of the Days Inn was introduced as evidence at trial. The video does not depict, as Mr. Harris suggests, innocuous footage of him with his arm around his girlfriend as the couple walk out of the hotel consensually together. The video footage is much more chilling than Mr. Harris would have us believe, and instead shows him restraining A.W. in some type of headlock with his right arm as he forcibly pulls or drags her alongside of him down the hallway and through the doorway leading to the parking lot. Mr. Harris' left arm may also be possibly involved in his restraint of A.W., but it cannot be completely seen from the security camera's vantage point. Although A.W. is able to remain on

her feet while being forced down the hallway, she is unmistakably resisting Mr. Harris as she struggles against him to no avail. She appears to make a couple futile efforts to grab the stair railing banisters and the door as she is forced out of the hotel and into the parking lot. During their intense struggle down the hallway, the two manage to kick over the entire end of a long doormat as they pass over it. Furthermore, upon viewing the video during his direct examination at trial, Aaron testified: "Actually, that was a little bit nicer than what [Mr. Harris] was doing when I saw him in the [other] hallway."

{¶18} Aaron also testified that, once in the parking lot, he could see Mr. Harris dragging and hitting A.W. while she was kicking, screaming, and telling him to let her go. David testified that Mr. Harris shoved A.W. into the van and Matthew testified that "[s]he was drug (sic) into the van." Some of the workers went into the van and brought her back out. Matthew testified on cross-examination that A.W. was yelling at Mr. Harris and telling him to leave her alone.

{¶19} After a series of heated incidents in the parking lot, in which the workers managed to separate A.W. from Mr. Harris, A.W. is seen on the hallway surveillance video re-entering the hotel alone. Ten seconds later, Mr. Harris is seen running into the hotel after her, immediately followed by one of the workers. Mr. Harris is seen pulling A.W. by her arms back toward the door to the parking lot before several workers intervene. The police soon arrive and Officer Paige Mitchell enters the hallway. Officer Mitchell testified that when she arrived on scene, she observed A.W. backing away from Mr. Harris when he approached her in the hallway, and that A.W. was upset, frustrated, crying, and pacing. Officer Figula also testified that A.W. was visibly upset, distraught, and appeared terrified at the scene. While Mr. Harris is correct that no police officers testified as to observing any physical injuries on A.W., the existence of

physical injuries is not an element of either kidnapping or abduction that the State needs to prove. *See State v. Browder*, 8th Dist. Cuyahoga No. 99727, 2014-Ohio-113, ¶ 23.

{¶20} After reviewing the evidence contained in the record in a light most favorable to the prosecution, we conclude that the State satisfied its burden of production and presented sufficient evidence, if believed, that Mr. Harris committed the offenses of kidnapping and abduction. We further conclude that any rational trier of fact could have found all of the essential elements of those offenses proven beyond a reasonable doubt, as ample evidence was presented to prove that Mr. Harris forcibly removed A.W. from the Days Inn hotel and restrained her liberty to terrorize her and place her in fear and in risk of physical harm.

## Manifest Weight of the Evidence

{¶21} Mr. Harris also argues that his convictions are against the manifest weight of the evidence. This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶22} *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶23} Although Mr. Harris claims that his convictions are against the manifest weight of the evidence, he does not present or develop any meaningful argument in support of his claim. He only states: "Even assuming *arguendo* that the evidence presented at trial concerning all of the essential elements of those three charged offenses was somehow sufficient, an independent re-weighing of the same evidence demonstrates that the evidence weighs heavily against the convictions." "[S]ufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vincente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20. Mr. Harris has not challenged the evidence set forth by the State as "unreliable or lacking credibility." *See State v. Smith*, 9th Dist. Summit No. 27877, 2016-Ohio-7278, ¶ 16. Accordingly, this Court will not develop a manifest weight argument on his behalf. *See State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 32. *See also Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028, *22 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out").

{¶24} Mr. Harris' first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

THE TRIAL COURT VIOLATED THE DEFENDANT-APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW, WHERE IT FAILED TO COMPLY WITH R.C. 2938.11(F) BY NOT ANNOUNCING IN OPEN COURT THE VERDICT, OR FINDINGS DETERMINED BY THE JUDGE, IN DEFENDANT-APPELLANT'S BENCH TRIAL WHICH CONCLUDED ON NOVEMBER 16, 2016.

{¶25} In his second assignment of error, Mr. Harris argues that the trial court violated his due process rights by failing to comply with R.C. 2938.11(F), and announcing its verdict in a journal entry instead of in open court. We disagree.

{¶26} A trial court's application of a statute involves a question of law, which this Court reviews de novo. *State v. West*, 9th Dist. Lorain No. 04CA008554, 2005-Ohio-990, ¶ 33.

"When applying the de novo standard of review, this Court gives no deference to the trial court's legal determinations." *Id.*

**{¶27}** At the conclusion of Mr. Harris' bench trial on November 16, 2016, the trial court stated on the record: "I will be reviewing [the exhibits] this afternoon and then proceeding with deliberations this afternoon. * * * I should be able to have a decision by the end of the afternoon, and I'll send entries to counsel." Mr. Harris did not object to the trial court's comment that it intended to announce its verdict by journal entry. On the following day, November 17, 2016, the court filed a journal entry finding Mr. Harris guilty of the one kidnapping charge and two abduction charges and further setting a status hearing for November 21, 2016, to determine a sentencing date. Nothing in the record suggests that Mr. Harris, at any time, objected or filed any motion for the verdict to be announced in open court. At his sentencing hearing on January 9, 2017, Mr. Harris read a prepared, written statement to the trial court, in which he mentioned for the first time on the record the court's failure to comply with R.C. 2938.11(F), along with numerous other issues, and made an oral motion to dismiss the case. The trial court denied the oral motion to dismiss, restated its verdicts, and proceeded with sentencing.

**{¶28}** R.C. 2938.11(F) states:

> Any verdict arrived at by the jury, or finding determined by the judge or magistrate in trial to the court, shall be announced and received only in open court as soon as it is determined. Any finding by the judge or magistrate shall be announced in open court not more than forty-eight hours after submission of the case to him.

**{¶29}** "[T]he purpose of [R.C. 2938.11(F)] is to provide for the prompt disposition of criminal cases where there is a bench trial." *Sheffield v. Nieves*, 52 Ohio App.2d 187, 188 (9th Dist.1976). Nevertheless, R.C. 2938.11(F) is not mandatory in nature, but only directory. *Id.*, citing *State ex rel. Turrin v. Tuscarawas Cty. Court*, 5 Ohio St.2d 194, 196 (1966). "R.C.

2938.11(F) which states a court shall announce any verdict in open court does not proscribe mandatory procedure by the court but, rather, it is just a directory guideline suggested by the legislature." *City of Cleveland v. Criss*, 8th Dist. Cuyahoga No. 72862, 1998 Ohio App. LEXIS 5900, *27-28 (Dec. 10, 1998). *See also State ex rel. Martin v. Mannen*, 113 Ohio St.3d 373, 2007-Ohio-2078, ¶ 6 ("The time requirement in R.C. 2938.11(F) * * * is directory, not mandatory"). "[T]he statute itself provides no sanction or consequences for the failure to comply with it." *State v. McBride*, 7th Dist. Harrison Nos. 360 & 361, 1981 Ohio App. LEXIS 11965, *19 (Oct. 6, 1981); *but see Sheffield* at 188 (holding that a defendant is entitled to a judgment *within a reasonable time*, and a judgment of guilt approximately seven months after the defendant rests his case is a denial of due process). "Although 'judges should strive to comply with these directory guidelines,' R.C. 2938.11(F) does not provide a clear legal right to the vacation of convictions based on noncompliance with that provision." *State v. Doughman*, 4th Dist. Adams No. 16CA1023, 2017-Ohio-4253, ¶ 12, quoting *Martin* at ¶ 6.

{¶30} As R.C. 2938.11(F) has repeatedly been held by courts to be directory in nature, we cannot say that the trial court committed reversible error in this particular instance. The trial court sufficiently complied with the statute and promptly announced its verdict one day after Mr. Harris' trial concluded. Mr. Harris has failed to show how he suffered any prejudice by being informed of the court's verdict in a journal entry rather than in open court. *See State v. Cuiksa*, 7th Dist. Belmont No. 84-B-5, 1985 Ohio App. LEXIS 5462, *3 (Jan. 17, 1985) (concluding that appellants suffered no prejudice resulting from the trial court not announcing its findings in open court). *See also State v. Camp*, 6th Dist. Wood No. WD-78-3, 1978 Ohio App. LEXIS 8638, *5 (May 5, 1978) ("[I]n the absence of a legislative sanction for failure to comply with R.C. 2938.11(F), and in the absence of evidence indicating that the delay herein was unreasonable or

prejudicial, we cannot say that defendant wa[s] denied her due process rights"). The trial court also set an additional status hearing five days after trial concluded, but Mr. Harris never objected or demanded oral pronouncement of his verdict at any time prior to, during, or after that status hearing. *See State v. Deckard*, 5th Dist. Stark No. 1999CA00276, 2000 Ohio App. LEXIS 2683, *5 (June 19, 2000) ("If the accused does not demand a decision by filing an objection or a motion, then the accused should not be permitted to appeal on the grounds of a late judgment entry"). *See also Martin* at ¶ 6. It was only at his sentencing hearing, 53 days after his trial concluded, that Mr. Harris first brought this issue to the court's attention. Even then, Mr. Harris did not demand oral pronouncement of the verdict in open court, but only informed the court that it failed to comply with the statute. After some discussion at the sentencing hearing, the court reiterated its guilty verdicts in open court:

> THE COURT: Defendant appeared in [c]ourt for sentencing after having pled not guilty to and been found guilty by the [c]ourt after a court trial of the following charges:
>
> Count Two, kidnapping, a Felony 1.
>
> Count Three, abduction, a Felony 3.
>
> And Count Four, abduction, a Felony 3.

{¶31} We conclude that, in this particular case, Mr. Harris suffered no prejudice resulting from the trial court's failure to *initially* announce its verdict in open court. *See Cuiksa* at *3; *Camp* at *5. Moreover, by failing to object, failing to motion the court, and failing to demand in any way that the court orally announce its verdict in open court, Mr. Harris effectively acquiesced to the trial court's method of announcing its verdict via journal entry and setting a status hearing. *See Deckard* at *5. Even if we determined that the trial court erred by first announcing its verdict in a journal entry, any such error was plainly rectified when the court

orally announced its verdict in open court at the sentencing hearing. *See Criss* at \*27-28 (concluding that the court did not err under R.C. 2938.11(F) when it announced each decision and sentence at the sentencing hearing). Consequently, as the trial court sufficiently complied with R.C. 2938.11(F), we cannot conclude that it committed reversible error in this matter.

{¶32} Mr. Harris' second assignment of error is overruled.

## III.

{¶33} Mr. Harris' first and second assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

JOSEPH F. SALZGEBER, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.