[Cite as *State v. Syed*, 2018-Ohio-1438.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

v.

AZEEM Y. SYED, et al.

    Appellants

C.A. Nos.    17CA0013-M
                17CA0014-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE Nos.    14CR0420
                13CR0340

DECISION AND JOURNAL ENTRY

Dated: April 16, 2018

HENSAL, Judge.

**{¶1}** Adam Syed and Azeem Syed appeal their convictions from the Medina County Court of Common Pleas. We affirm in part, and reverse in part.

I.

**{¶2}** This consolidated appeal stems from the criminal charges brought against Adam Syed and his father, Azeem Syed, related to their alleged involvement in two casino gaming operations. By way of background, Adam owned and operated Cyber City and Cyber 777, two (now defunct) gaming establishments that were the subject of the underlying cases. Both establishments were located in Medina County. After receiving tips that illegal gambling was taking place at these establishments, the police initiated an investigation, which included officers performing undercover work and posing as customers.

{¶3} The officers who performed undercover work all testified to a similar set of facts. They testified that they would enter the establishments and put cash directly into gaming machines that they described as slot machines. They further testified that if they won, they would raise their hand and an employee would walk over and pay them their winnings in cash from either the cash register or the gaming machine itself.

{¶4} As a result of their investigation, the police executed search warrants at Cyber City and Cyber 777, as well as Azeem's home (where Adam lived), Azeem's business (A&A Vending Company, Inc.), and a former motorcycle shop that the Syed family used for storage, which Azeem owned. Officers testified that the purpose of the search of A&A Vending was to locate evidence connecting Azeem to his son's gaming businesses.

{¶5} The officers who participated in the execution of the search warrants testified as to the items seized at each location, as well as the connection those items had to the gaming establishments. Relevantly, the items seized included the gaming machines from Cyber City and Cyber 777, a pallet of gaming machines, which were still in shrink wrap, from A&A Vending, gaming machines that the officers found inside the motorcycle shop, cash from Adam's rental car, cash from inside of the Syed family's home, and hundreds of documents found at A&A Vending. The documents found in Azeem's office at A&A Vending included a repair bill for Cyber City, sign-in sheets that appeared to be used at the gaming establishments, time-sheets for some of the employees at Cyber City, assembly instructions for a prize wheel that officers saw at Cyber City, and a lease – which Azeem co-signed – for Cyber 777.

{¶6} A grand jury indicted Adam on 12 counts of operating a casino gaming operation in violation of Revised Code Section 3772.99(E)(12), eight counts of possessing criminal tools (i.e., slot machines) in violation of Section 2923.24(A), and 16 accompanying forfeiture

specifications under Sections 2941.1417(A), 2981.02(A)(1), 2981.02(A)(2), and 2981.02(A)(3). A grand jury indicted Azeem on five counts of complicity to operate a casino gaming operation in violation of Sections 2923.03(A)(2) and 3772.99(E)(12), and 11 accompanying forfeiture specifications in violation of Sections 2941.1417(A), 2981.02(A)(2), and 2981.02(A)(3).

{¶7}    Adam and Azeem both pleaded not guilty, and the matter proceeded to a bench trial.    The trial court found Adam and Azeem guilty of all counts and the accompanying specifications.    They both appealed, and this Court consolidated the appeals for purposes of decision only.    For ease of consideration, we will address Adam's assignments of error first.

II.

ADAM SYED'S ASSIGNMENT OF ERROR I

THE EVIDENCE IN THIS CASE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT THE CONVICTIONS.

{¶8}    In his first assignment of error, Adam argues that the State failed to present sufficient evidence to support his convictions.    He makes three primary arguments in this regard, which, for ease of discussion, we will address out of order.

{¶9}    Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo.    *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).    In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶10}** Section 3772.99(E)(12), under which Adam was convicted, prohibits a person from purposely or knowingly "operat[ing] a casino gaming operation in which wagering is conducted or is to be conducted in a manner other than the manner required under this chapter or a skill-based amusement machine operation in a manner other than the manner required under Chapter 2915 of the Revised Code." There was no dispute at trial that the gaming machines at issue were not skill-based amusement machines. Thus, the latter part of the statute is inapplicable.

**{¶11}** "Casino gaming" is defined, in part, as "any type of slot machine * * * using money, casino credit, or any representative of value[.]" R.C. 3772.01(E). A "[s]lot machine" is defined as:

> any mechanical, electrical, or other device or machine which, upon insertion of a coin, token, ticket, or similar object, or upon payment of any consideration, is available to play or operate, the play or operation of which, whether by reason of the skill of the operator or application of the element of chance, or both, makes individual prize determinations for individual participants in cash, premiums, merchandise, tokens, or any thing of value, whether the payoff is made automatically from the machine or in any other manner * * *.

R.C. 3772.01(X).

**{¶12}** Adam argues that the State failed to establish that the machines in his gaming establishments were slot machines and, thus, failed to establish that his gaming establishments were casino gaming operations as defined under Ohio law. To that end, he argues that the evidence established that the machines were finite sweepstakes machines, not slot machines, because they had been modified to remove the elements of chance and consideration. He also argues that the State failed to present sufficient evidence to establish that all of the gaming machines were slot machines because the State's expert only tested two machines from Cyber City.

{¶13} Adam's arguments in this regard focus on his own witnesses' testimony and ignore much of the evidence presented by the State. Initially, we note that there was no dispute at trial that Adam did not have the proper licensing to operate slot machines at his gaming establishments. There was also no dispute that Adam purchased numerous slot machines for both establishments, and that he knew that – as purchased – he could not legally use them at Cyber City and Cyber 777.

{¶14} As previously noted, several officers testified that they played the machines at both gaming establishments. They testified that they put money directly into the machines, and that – if they won – they would raise their hand. This would signal an employee who would then walk over and pay them their winnings in cash from either the cash register or the game itself. An employee who worked at both establishments corroborated the officers' testimony. She testified that customers put cash directly into the machines, and that – if they won – she would pay them their winnings in cash. Officers – as well as a customer that frequented both locations – described the games as slot machines.

{¶15} The manager of slot operations from the Ohio Casino Control Commission also testified on behalf of the State. He testified that he oversees the regulation of all of the electronic gaming equipment that is used in casinos, including slot machines. He testified that this includes testing software on slot machines to determine whether the software has been modified in any way. He explained that, to do this, he examines the "hash value" of the machine's software, which he described as a digital fingerprint. He testified that if you modify the software – including modifying the software to allow for a sweepstakes style game – the hash value would change. Relative to this case, he testified that he removed and tested the software from two

machines at Cyber City. He concluded that neither machine had been modified, and that the machines were slot machines as defined under Ohio law.

{¶16} Additionally, an agent from the Ohio Bureau of Criminal Investigation testified that he was familiar with definitional characteristics of a slot machine under Ohio law, and that the games he played while performing undercover work at Cyber City were, in fact, slot machines.

{¶17} To the extent that Adam relies upon the Fifth District's decision in *State v. Rocco*, 5th Dist. Stark No. 2011CA00071, 2011-Ohio-4978, for the proposition that testimony from officers who did not examine the machines is insufficient for purposes of establishing the nature of the gaming machines, we are unpersuaded by his argument as *Rocco* is distinguishable in several respects. In *Rocco*, the defendant was convicted of one count of "skill-based amusement machine prohibited conduct" in violation of Section 2915.06. *Id.* at ¶ 2. On appeal, the Fifth District addressed the issue of whether the State presented sufficient evidence to establish that the gaming machine at issue was a skill-based amusement machine under Section 2915.01(AAA). *Id.* at ¶ 29. At trial, two agents from the Ohio Department of Public Safety Investigative Unit who performed undercover work, one of whom played the game at issue, testified that the game was a skill-based amusement machine. *Id.* at ¶ 30. The agents admitted, however, that no examination of the machine was done to determine whether it was, in fact, a skill-based amusement machine. *Id.* at ¶ 33. The Fifth District determined that, "[i]mplicit in the statute is the need to establish competent credible evidence that the [machine] was a skilled-based amusement machine[,]" which is generally established through expert testimony. *Id.* at ¶ 34. Because "both agents admitted to not being experts and to not examining the * * * machine relative to the definitional characteristics[,]" and because other evidence indicated that the

machine paid out cash like a slot machine, rather than a skill-based machine, the Fifth District held that insufficient evidence existed to support the defendant's conviction. *Id.* at ¶ 35-36.

{¶18} Here, as previously noted, the State not only presented testimony from officers and a customer who played on the gaming machines at both locations, but from the manager of slot operations at the Ohio Casino Control Commission who examined two of the machines from Cyber City and determined that they were slot machines as defined under Ohio law. Unlike in *Rocco*, the State also presented testimony from an agent from the Ohio Bureau of Criminal Investigation who was familiar with definitional characteristics of a slot machine under Ohio law and opined that the games he played while performing undercover work at Cyber City were slot machines. We, therefore, are unpersuaded by Adam's argument under *Rocco*.

{¶19} Further, to the extent that Adam argues that the State failed to prove that all of the machines from Cyber City and Cyber 777 were slot machines in light of the fact that the State only tested two machines from Cyber City, we are unpersuaded by his argument. Adam acknowledges in his merit brief that there is no support for an argument that the State was required to test every machine, but argues that – like cases involving illegal drugs – the State was required to test an adequate sample of the gaming machines, which it did not do. Here, all of the evidence, including the testimony from the undercover officers, an actual customer, as well as an employee who worked at both establishments, indicated that the machines at both locations operated in the same way: customers inserted cash into the machine, and – if they won – they received a cash payout. Although Adam argues that the machines had been modified, he and one of his witnesses both acknowledged that all of the machines – as purchased – were slot machines that could not be legally operated at his gaming establishments. Under these circumstances, we

cannot say that the State failed to present sufficient evidence to establish that the machines at both locations were slot machines as defined under Ohio law.

{¶20} Adam also asserts that the State failed to present sufficient evidence relative to his convictions for possession of criminal tools. Section 2923.24(A), under which Adam was convicted, provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, *with purpose to use it criminally*." (Emphasis added.) Adam argues that, since the State failed to prove that the gaming machines were slot machines, they cannot be criminal tools that are unlawful to possess. Section 2923.24(A), however, contains no requirement that the tool be unlawful to possess, only that the defendant possess it "with [the] purpose to use it criminally." We, therefore, reject Adam's argument.

{¶21} Adam also challenges the sufficiency of the evidence as it relates to the mens rea requirement, arguing that the State failed to establish that he purposely operated a casino gaming operation or knowingly possessed criminal tools. In this regard, he argues that the evidence indicated that he made every possible effort to ensure that the machines were modified to be consistent with the only available standard at the time, which was a Summit County ordinance.

{¶22} Section 2901.22 defines "purposely" and "knowingly" as follows:

A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(A) & (B).

{¶23} As this Court has stated, "[w]hen the defendant's culpable mental state is in issue, the proof of a mental state must be derived from circumstantial evidence, as direct evidence will not be available." *State v. Flowers*, 9th Dist. Lorain No. 03CA008376, 2004-Ohio-4455, ¶ 15. Here, the evidence indicated that Adam knew that the machines – as purchased – could not be legally operated at his gaming establishments. Other evidence indicated that he paid his employees under the table, never issued a single payroll check, and never claimed income from the gaming establishments. Viewing this evidence in a light most favorable to the State, we cannot say that insufficient evidence existed to support the trial court's findings relative to Adam's mens rea. In light of the foregoing, Adam's first assignment of error is overruled.

ADAM SYED'S ASSIGNMENT OF ERROR II

THE VERDICTS IN THIS CASE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶24} In his second assignment of error, Adam asserts that his convictions were against the manifest weight of the evidence. Although Adam's assignment of error contains the relevant law with respect to this Court's standard of review, he fails to develop any argument in support of his position. *See* App.R. 16(A)(7). Aside from statements of law, his assignment of error states: "to the extent this Court finds that any of the arguments made under Assignment of Error I go to the weight of the evidence and not sufficiency, Appellant Syed argues that it is within this Court's authority to weigh the evidence presented and find that the manifest weight of the evidence favors Appellant Syed[,]" and that "the entire record will show that the trial court did lose its way when it convicted him on all counts and that it was a manifest miscarriage of justice that must be overturned." Such conclusory statements are not sufficient for purposes of establishing error on appeal. *R. K. v. T. K.*, 9th Dist. Summit No. 28576, 2017-Ohio-7855, ¶ 8;

*see Cardone v. Cardone*, 9th Dist. Summit Nos. 18349, 18673, 1998 Ohio App. LEXIS 2028, *22 (May 6, 1998), citing App.R. 12(A)(2) and App.R. 16(A)(7).  Adam's second assignment of error is overruled.

ADAM SYED'S ASSIGNMENT OF ERROR III

> THE TRIAL COURT ERRED WHEN IT ORDERED THE FORFEITURE OF CERTAIN CASH AND PROPERTY BECAUSE THE EVIDENCE FAILED TO ESTABLISH THAT THE CASH AND PROPERTY WAS ASSOCIATED WITH THE ALLEGED CRIMES OF OPERATING A "CASINO GAMING OPERATION."

**{¶25}**  In his third assignment of error, Adam argues that the trial court erred when it ordered the forfeiture of certain cash and property because the State failed to establish that the cash and property was associated with the alleged crimes of operating a casino gaming operation.

**{¶26}**  "The State bears the burden of proving, by a preponderance of the evidence, that property is forfeitable under R.C. 2981.02."  *State v. Jelenic*, 9th Dist. Medina No. 10CA0024-M, 2010-Ohio-6056, ¶ 8, citing R.C. 2981.04(B).  Property subject to forfeiture under Section 2981.02 includes "[c]ontraband involved in an offense; * * * [p]roceeds derived from or acquired through the commission of an offense; [and] [a]n instrumentality that is used in or intended to be used in the commission or facilitation of any * * * felony."  R.C. 2981.02(A)(1)-(3)(a).  As this Court has stated:

> "A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." * * * "This Court applies a de novo standard of review to an appeal from a trial court's interpretation and application of a statute." * * * As such, this Court reviews de novo the matter of whether a trial court correctly interpreted and adhered to the statutory scheme for forfeiture. A challenge to the court's ultimate determination that the State either succeeded or failed in proving that an item is subject to forfeiture, however, is a question of whether the State met its burden. "When reviewing a judgment based on a preponderance of the evidence, we will not reverse the judgment if there is 'some competent, credible evidence going to all the essential elements of the case.'"

*State v. Trivette*, 195 Ohio App.3d 300, 2011-Ohio-4297, ¶ 7 (9th Dist.)

{¶27} Adam argues that the $3,920 in cash seized from a bag found in his rental car was from an entirely separate business, not his gaming establishments. He argues that the ledgers that were found along with the cash demonstrate that it was from his gentlemen's club in Portage County. The State argues that, since the cash was found in a car parked outside of the Syed family home, which is where the police found another bag of money that Adam admitted was related to his gaming establishments, competent, credible evidence existed to establish that the bag of cash from the car constituted proceeds of Adam's gaming establishments.

{¶28} At the forfeiture hearing, the State did not present additional evidence and instead chose to rely on the evidence it presented at trial. That evidence included testimony from a detective involved in the execution of the search warrant at the Syed family home. He testified that the State's Exhibit 53 depicted the cash found in the bag inside of Adam's rental car, which was parked in the driveway. A review of Exhibit 53 supports Adam's position; it shows cash along with documents referencing the gentlemen's club. Having reviewed the entire record, we cannot say that competent, credible evidence existed to support the forfeiture of the $3,920 in cash found in Adam's rental car.

{¶29} Adam also argues that, although the trial court ordered the return of $18,000 from a Wells Fargo account relative to another specification, he has not received that money. A direct appeal to this Court, however, is not the proper mechanism to challenge the trial court's alleged failure to return his money. We, therefore, will disregard his argument in that regard.

{¶30} Regarding the seized property, Adam argues that there is nothing inherently illegal about possessing nonfunctional gaming machines. He argues that the machines seized from A&A Vending, which were still in shrink wrap, were not functional, were not slot

machines, and, therefore, were not illegal. He also argues that the nonfunctional machines and parts seized from the motorcycle shop should not have been forfeited.

{¶31} The trial court found that the machines seized from A&A Vending were contraband, and that the machines seized from the motorcycle shop were instrumentalities. "'Contraband' means any property that is illegal for a person to acquire or possess under a statute, ordinance, or rule, or that a trier of fact lawfully determines to be illegal to possess by reason of the property's involvement in an offense." R.C. 2901.01(A)(13). "'Instrumentality' means property otherwise lawful to possess that is used in or intended to be used in an offense." R.C. 2981.01(B)(6).

{¶32} The evidence indicated that the machines delivered to A&A Vending and those being stored in the motorcycle shop were of the same type as those found in Cyber City and Cyber 777. Indeed, the evidence indicated that a machine found in the motorcycle shop had a sign saying: "Welcome to Cyber City" on it. Additionally, Adam admitted that the machines at the motorcycle shop were in storage, that they were being used for parts, and that a lot of them were under repair. Furthermore, an officer testified that he recognized one of the machines at the motorcycle shop as being the same one that he saw another officer play while conducting the undercover investigation. Regarding the machines seized form A&A Vending, Adam testified that he had intended to modify those machines at another location in Stark County.

{¶33} Having reviewed the entire record, we find that competent, credible evidence existed to support the trial court's determination that the machines seized from A&A Vending were involved in Adam's operation of the gaming establishments. We also find that competent, credible evidence existed to support the trial court's determination that the machines seized from the motorcycle shop were intended to be used in the operation of the gaming establishments.

{¶34} Adam's third assignment of error as it relates to the $3,920 seized from his rental car is sustained. The remainder of Adam's third assignment of error is overruled.

AZEEM SYED'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL.

{¶35} In his first assignment of error, Azeem argues that the trial court erred by denying his Criminal Rule 29 motion for acquittal. "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence. * * * The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction." *State v. Aberegg*, 9th Dist. Medina No. 08CA0079-M, 2009-Ohio-4253, ¶ 4. "The State's evidence is sufficient if it allows the jury to reasonably conclude that the essential elements of [the offense] were proven beyond a reasonable doubt." *Id.* Azeem makes three primary arguments in support of his position that the trial court erred by denying his Criminal Rule 29 motion for acquittal, which we will address in turn.

{¶36} First, Azeem argues that the State failed to present sufficient evidence to establish that he was complicit to the crime of operating a casino gaming operation. He argues that "[t]he only evidence which was presented regarding this issue was actually contrary to the possibility that [he] supported, assisted, encouraged, cooperated, advised or incited the principal in the commission of any crime." Azeem's argument in this regard, however, fails to contain any citations to the record. *See* App.R. 16(A)(7). Further, it ignores much of the evidence presented at trial, including evidence regarding the documents found in his office at A&A Vending that related to Adam's gaming businesses (e.g., a repair bill for Cyber City, sign-in sheets that appeared to be used at the gaming establishments, time-sheets for some of the employees at Cyber City, assembly instructions for a prize wheel that officers saw at Cyber City, and a lease –

which he co-signed – for Cyber 777), invoices from gaming companies that listed the customer and/or shipping address as A&A Vending, and the fact that Adam shipped and stored gaming machines to buildings Azeem owned.

{¶37} Second, Azeem asserts that since Adam was not charged for crimes on the same dates that he was charged (apart from June 4, 2013), he cannot be found guilty of complicity for those dates. Aside from citing the complicity statute, Azeem has cited no law in support of his position that an aider and abettor must be charged with crimes on the same dates as the principal offender. *See* App.R. 16(A)(7). He also asserts that the State presented no evidence to indicate that he aided and abetted his son on the dates listed in the indictment. Azeem's argument, however, ignores the fact that the State presented evidence linking the dates listed in the indictment to dates on various invoices from gaming companies that listed A&A Vending as the shipping address, a date of a wire transfer that paid one of the invoices, as well as the date of the search of A&A Vending, which yielded several documents that connected Azeem to Adam's gaming businesses. We, therefore, are unpersuaded by Azeem's argument that the State presented no evidence relative to the dates listed in the indictment.

{¶38} Third, Azeem argues that the trial court erred by not granting his Criminal Rule 29 motion because all of the events in question occurred in Summit County, not Medina County, and, therefore, venue in Medina was not proper. His argument in this regard relates to the fact that his business (A&A Vending) is located in Summit County.

{¶39} In response, the State argues that, because the principal offense occurred in Medina County, venue in Medina County was proper. We agree. *State v. Leanza*, 9th Dist. Summit Nos. 10506, 10517, 10538, 1982 Ohio App. LEXIS 14473, *10 (Sep. 1, 1982) ("As a

general rule, venue for an aider and abettor will rest in the county of the principal offense."). In light of the foregoing, Azeem's first assignment of error is overruled.

AZEEM SYED'S ASSIGNMENT OF ERROR II

THE APPELLANT'S CONVICTION MUST BE REVERSED BECAUSE IT IS AGAINST THE WEIGHT OF THE EVIDENCE.

{¶40} In his second assignment of error, Azeem argues that his conviction was against the manifest weight of the evidence. If a defendant asserts that a conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶41} Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d 380, at 387 (1997). An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶42} In support of his assignment of error, Azeem argues that there is very little evidence to weigh, and that any evidence presented did not allow for an inference of guilt. He argues that the State did not refute Adam's testimony that he had nothing to do with Adam's gaming businesses, nor did it attempt to prove that he even knew that Adam's machines were in his buildings.

{¶43} Regarding the former point, Azeem's argument again ignores much of the evidence presented at trial, including evidence relating to a lease Azeem co-signed for Cyber

777, as well as several other previously discussed documents found in Azeem's office at A&A Vending. Regarding the latter point, Azeem's argument ignores the fact that a detective from the Ohio Casino Control Commission who participated in the search of A&A Vending testified that he asked Azeem about the machines delivered to A&A Vending, and that Azeem told him that his "son had them delivered there."

{¶44} In light of the argument presented, and having reviewed the entire record, we cannot say that the trial court's judgment was against the manifest weight of the evidence. Azeem's second assignment of error is overruled.

AZEEM SYED'S ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN NOT DISMISSING THE MATTER AT HAND PER THE APPELLANT'S REQUEST BECAUSE, AS ARGUED AT TRIAL, THE INDICTMENT WAS DEFECTIVE.

{¶45} In his third assignment of error, Azeem argues that the trial court erred by not dismissing the case on the basis of a defective indictment. He argues that the indictment was defective because it did not state where or how he aided and abetted Adam. In response, the State argues that the plain-error standard of review applies because Azeem did not move to dismiss the indictment at the trial court. Azeem's written motion under Criminal Rule 29, however, specifically raised this issue.

{¶46} Regarding Azeem's argument that the indictment did not state where he aided and abetted Adam, Section 2941.03(D) provides that an indictment is sufficient if it can be understood therefrom that "an offense was committed at some place within the jurisdiction of the court[.]" Here, the indictment listed the place where the crime occurred as Medina County. "Such a statement as to the location where a crime occurred is entirely sufficient." *State v. Brust*,

4th Dist. Pike No. 95CA551, 1995 Ohio App. LEXIS 5681, *18 (Nov. 20, 1995), citing R.C. 2941.03(D).

**{¶47}** Regarding Azeem's argument that the indictment did not state how he aided and abetted Adam, this Court has stated that "[a]n indictment is not 'required to list the precise actions which constitute an offense.'" *State v. Kolvek*, 9th Dist. Summit Nos. 28141, 28142, 28143, 28144, 28145, 2017-Ohio-9137, ¶ 5, quoting *Brust* at *18. "Rather, the indictment may state the charge in terms of a statute, provided the words of the statute charge an offense with enough specificity to provide a defendant with sufficient notice of all the elements of the offense." *Brust* at *18-19, citing Crim.R. 7(B). Here, the indictment stated the charges in terms of the statutes, and Azeem has not argued that the statutes did not charge the offenses with enough specificity to provide him with sufficient notice of all of the elements of the offenses. We, therefore, reject his argument. In light of the forgoing, Azeem's third assignment of error is overruled.

### AZEEM SYED'S ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN FINDING THE APPELLANT GUILTY OF THE SPECIFICATIONS LISTED WITHIN THE INDICTMENT AND FORFEITING SAID MONIES AND PROPERTIES BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO FIND HIM GUILTY OF SAID SPECIFICATIONS; FURTHERMORE, SAID MONIES AND PROPERTIES WERE NOT OBTAINED, DIRECTLY OR INDIRECTLY FROM THE COMMISSION OF THE INDICTED FELONY OFFENSES OR WERE NOT USED TO FACILITATE SAID FELONIES. FURTHERMORE, THE CONVICTIONS OF THE SPECIFICATIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶48}** In his fourth assignment of error, Azeem challenges both the sufficiency and the manifest weight of the evidence as it relates to the forfeiture specifications. Regarding the sufficiency of the evidence, Azeem argues that the State presented no evidence indicating that the money and property taken from him were derived from the commission of the indicted

felonies, or that the money and property were instrumentalities used to facilitate the commission of the indicted felonies. He, therefore, requests that all of his money and property be returned to him. Azeem also asserts that the findings of guilt relating to the forfeiture specifications were against the manifest weight of the evidence.

**{¶49}** In response, the State argues that Azeem lacks standing to challenge the forfeiture specifications because, at the forfeiture hearing, he specifically disclaimed any interest in the seized money and property aside from a portion of the money relative to Specification 1, which the trial court ordered to be returned to him.

**{¶50}** Our review of the record supports the State's position. At the forfeiture hearing, Azeem's counsel stated that "other than forfeiture Specification 1, Azeem Syed has no interest in any of the rest of the * * * specifications." During his testimony, Azeem clarified that he was only making a claim for a portion of the cash relative to Specification 1 ($104,410), which the trial court ordered to be returned to him. We, therefore, agree with the State's position and overrule Azeem's fourth assignment of error. *State v. Mudge*, 9th Dist. Lorain Nos. 10CA009838, 10CA009839, 10CA009841, 10CA009842, 10CA009843, 10CA009844, 10CA009845, 10CA009846, 10CA009847, 2011-Ohio-2199, ¶ 11 ("For an alleged owner to challenge the forfeiture of property, it must have an ownership interest in that property. * * * If it lacks such an interest, then it lacks standing to challenge the forfeiture.").

III.

**{¶51}** Adam's first, second, and fourth assignments of error are overruled. Adam's third assignment of error as it relates to the $3,920 seized from his rental car is sustained. The remainder of Adam's third assignment of error is overruled. Azeem's assignments of error are

overruled. The judgment of the Medina County Court of Common Pleas is affirmed in part, and reversed in part.

Judgment affirmed in part,<br>and reversed in part.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs are taxed to both parties equally in Case No. 17CA0014-M, and costs are taxed to Appellant in Case No. 17CA0013-M.

JENNIFER HENSAL
FOR THE COURT

SCHAFER, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

MICHAEL T. CALLAHAN, Attorney at Law, for Appellant.

KERRY M. O'BRIEN, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.