[Cite as *State v. Myers*, 2022-Ohio-991.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 21AP0027 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JACOB MYERS | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. 2020 CRC-I 000335 |

DECISION AND JOURNAL ENTRY

Dated: March 28, 2022

CALLAHAN, Judge.

{¶1} Appellant, Jacob Myers, appeals his convictions by the Wayne County Court of Common Pleas. This Court affirms.

I.

{¶2} In the early hours of May 22, 2020, police officers from the City of Wooster responded to a 911 call regarding a suspected overdose death. When they arrived at the residence in which the deceased, S.M., was located, they identified two males and two females. Upon conducting a protective sweep, they also located Mr. Myers and a third female, who were sleeping on a futon-style couch in the basement. Police found that it was difficult to engage the individuals at the scene in conversation, and no one was taken into custody with regard to the incident at that time.

{¶3} Later that day, two of the individuals who had been identified at the scene and a third woman, who had not been previously identified, came to the Wooster Police Department and

requested to speak with an officer about the morning's events. According to their statements, during the course of the events surrounding the overdose death, Mr. Myers held the occupants of the house at gunpoint and told them that they were not to leave the premises. Based on this information, Mr. Myers was charged with three counts of kidnapping in violation of R.C. 2905.01(A)(3) and three counts of abduction in violation of R.C. 2905.02(A)(2), each accompanied by firearm specifications pursuant to R.C. 2941.145(A). Mr. Myers was also charged with having a weapon while under a disability in violation of R.C. 2923.13(A)(3) and disrupting public services in violation of R.C. 2909.04(A)(1). A jury found Mr. Myers not guilty of kidnapping and abduction with respect to two of the victims named in the indictment but guilty with respect to the third victim, J.B. The jury also found Mr. Myers guilty of the accompanying firearm specifications and the remaining charges of having a weapon while under disability and disrupting public services. The trial court merged the abduction and kidnapping counts for purposes of sentencing and sentenced Mr. Myers to a stated term of six to nine years for the kidnapping conviction with a mandatory three-year prison term for the accompanying firearm specification. The trial court also sentenced Mr. Myers to concurrent prison terms of twenty-four months and twelve months on the remaining convictions and ordered those sentences to be served concurrent to the sentence for the kidnapping conviction as well.

{¶4} Mr. Myers appealed, asserting two assignments of error.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST
WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶5} In his first assignment of error, Mr. Myers maintains that each of his convictions is based on insufficient evidence and is against the manifest weight of the evidence. This Court does not agree.

{¶6} Because sufficiency and manifest weight are separate and distinct questions, this Court has observed that "'it is not appropriate to combine a sufficiency argument and a manifest weight argument within a single assignment of error.'" *State v. Seibert*, 9th Dist. Wayne Nos. 20AP0013, 20AP0014, 2021-Ohio-3069, ¶ 13, quoting *State v. Mukha*, 9th Dist. Wayne No. 18AP0019, 2018-Ohio-4918, ¶ 11. *See also State v. Perkins*, 9th Dist. Wayne No. 20AP0031, 2021-Ohio-2630, ¶ 9; App.R. 12(A)(2); Loc.R. 7(B)(7). Nonetheless, this Court has the discretion to consider the merits of Mr. Myers' arguments, and we do so despite the fact that they are improperly framed. *See Seibert* at ¶ 13; *Perkins* at ¶ 9.

### Sufficiency of the Evidence

{¶7} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proved beyond a reasonable doubt. *Id*.

{¶8}   R.C. 2905.01(A)(3), which prohibits kidnapping, provides that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o terrorize, or to inflict serious physical harm on the victim or another[.]"  "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."  R.C. 2901.01(A)(1).  A "threat" includes "[a] communicated intent to inflict harm or loss on another * * *, [especially] one that might diminish a person's freedom to act voluntarily or with lawful consent; a declaration, express or implied, of an intent to inflict loss or pain on another[.]"  *Black's Law Dictionary* (11th Ed.2019).

{¶9}   "Terrorize" has been defined according to its ordinary and common usage: "'to fill with terror and anxiety.'"  *State v. Suggs*, 9th Dist. Summit Nos. 27812, 27865, 27866, 2016-Ohio-5692, ¶ 16, quoting *State v. Chasteen*, 12th Dist. Butler No. CA2007-12-308, 2009-Ohio-1163, ¶ 21, quoting *State v. Eggleston*, 11th Dist. Lake No. 2008-L-047, 2008-Ohio-6880, ¶ 30, fn. 1.  *Compare State v. Vigil*, 8th Dist. Cuyahoga No. 103940, 2016-Ohio-7485, ¶ 22 (defining "terrorize" as "impress with terror [or] fear or to coerce by intimidation").  With respect to the culpable mental state of an accused, "R.C. 2905.01(A) requires the state to show that the kidnapping involved a purposeful removal or restraint."  *State v. Hartman*, 93 Ohio St.3d 274, 289 (2001).  *See also State v. Harris*, 9th Dist. Lorain No. 17CA011109, 2018-Ohio-1329, ¶ 11; *State v. Wong*, 9th Dist. Summit No. 27486, 2016-Ohio-96, ¶ 28.  "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature."  R.C. 2901.22(A).

{¶10} R.C. 2905.02, which prohibits abduction, provides, in part, that "[n]o person, without privilege to do so, shall knowingly * * * [b]y force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear[.]" R.C. 2905.02(A)(2). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Because direct evidence of mental state is not available, proof of a culpable mental state "'must be derived from circumstantial evidence * * *.'" *State v. Syed*, 9th Dist. Medina Nos. 17CA0013-M, 17CA0014-M, 2018-Ohio-1438, ¶ 23, quoting *State v. Flowers*, 9th Dist. Lorain No. 03CA008376, 2004-Ohio-4455, ¶ 15.

{¶11} J.B. testified that, on the evening in question, she went to an apartment occupied by C.R. because she needed a ride after babysitting for a mutual acquaintance. Several other individuals, including Mr. Myers, were present. J.B. testified that she left the apartment at one point in the evening because she knew where they could obtain marijuana, but that they returned because C.R. "realized he didn't have his dope in his pocket[.]" When they returned to the apartment, she waited momentarily in the vehicle. J.B. testified that from that vantage point, she could see in the front door and, as a consequence, witnessed individuals inside the house flipping S.M. out of a recliner.[1] J.B. recalled that she entered the house as individuals were throwing water on S.M., but S.M. did not respond.

{¶12} According to J.B., despite the unfolding medical emergency, C.R. "was worried about his dope[.]" At one point, according to J.B.'s testimony, a female took J.B. upstairs and strip searched her. J.B. also testified that after briefly going upstairs himself, C.R. returned to the

---

[1] The witnesses at trial also referred to S.M. as "CC." Because it appears that S.M. is indicative of her proper name, this opinion refers to her by those initials for purpose of clarity.

first floor and handed Mr. Myers a gun. J.B. recalled that Mr. Myers took her phone when she tried to call 911, stood by the front door, and "said nobody was leaving." She testified that Mr. Myers and C.R. would not allow anyone to go near S.M. to render aid, and she recalled that Mr. Myers "stood at the door with a gun and I sat in front of the stairs * * * right in front of the door so he was right in front of me and he told me I was not allowed to move, wasn't allowed to help [S.M.]." J.B. testified that this situation persisted for approximately ninety minutes. She recalled that she felt "[s]cared" and testified that she thought she "was going to die." J.B. testified that after approximately ninety minutes, C.R. relented and instructed someone to call 911. J.B. recalled that she grabbed her phone and belongings, fled the house, and called 911 to report S.M.'s condition.

{¶13} Viewing the evidence at trial in the light most favorable to the State, a jury could reasonably conclude beyond a reasonable doubt that Mr. Myers restrained J.B.'s liberty by holding her at gunpoint while standing between her and the front door of the residence and denying her egress. A jury could also reasonably conclude, beyond a reasonable doubt, that Mr. Myers did so with the purpose to fill her with terror or anxiety or to coerce her to remain by means of intimidation. Accordingly, his conviction for kidnapping in violation of R.C. 2905.01(A)(3) is not based on insufficient evidence. Similarly, a jury could reasonably conclude beyond a reasonable doubt that Mr. Myers restrained J.B.'s liberty under circumstances that placed her in fear with the awareness that, by holding her at gunpoint, his conduct would probably cause that result. Consequently, his conviction for abduction is not supported by insufficient evidence.

{¶14} Mr. Myers was also convicted of possessing a weapon while under disability. R.C. 2923.13(A)(3) provides that "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance

if * * * [t]he person * * * has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * * ."  Mr. Myers does not dispute that he has a disability by virtue of a prior conviction for such an offense.  According to J.B.'s testimony, Mr. Myers took the gun from C.R. and stood blocking the front door with the gun drawn for approximately ninety minutes.  Viewing this testimony in the light most favorable to the State, a jury could reasonably believe beyond a reasonable doubt that Mr. Myers possessed a weapon while under disability, and his conviction is not based on insufficient evidence.

{¶15}  R.C. 2909.04(A)(1), which prohibits disrupting public services, provides that "[n]o person, purposely  by any means or knowingly by damaging or tampering with any property, shall * * * [i]nterrupt or impair * * * telephone * * * service * * *."  "'Telephone service' includes both the initiation and receipt of calls."  *State v. James*, 5th Dist. Stark No. 2016CA00144, 2017-Ohio-7861, ¶ 76, citing *State v. Brown*, 97 Ohio App.3d 293, 301 (8th Dist.1994).

{¶16}  This Court has concluded that turning off or denying access to an individual cellular phone, without more, is not sufficient evidence of disrupting public services.  *See State v. Bedford*, 9th Dist. Summit Nos. 25048, 25066, 2010-Ohio-3577, ¶ 9-11, citing *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 32, and *State v. Tayse*, 9th Dist. Summit No. 23978, 2009-Ohio-1209, ¶ 23.  Nonetheless, we have also stated that "[t]he gravamen * * * of the analysis is whether the services were interrupted or impaired in any significant way."  *Bedford* at ¶ 11.  *Compare James* at ¶ 76.  Consistent with this principle, evidence that an accused took a cellular phone away from a victim in order to prevent the victim from calling 911 will support a conviction under R.C. 2909.04(A)(1).  *See State v. Parker*, 7th Dist. Mahoning No. 15 MA 0174, 2017-Ohio-4382, ¶ 65-66; *State v. Tajblik*, 6th Dist. Wood No. WD-14-064, 2016-Ohio-977, ¶ 12-14; *James* at ¶ 76-82;

*State v. Galindo*, 5th Dist. Stark No. 2011CA00258, 2012-Ohio-3626, ¶ 16-21; *State v. White*, 2d Dist. Montgomery No. 21795, 2007-Ohio-5671, ¶ 6-15.

{¶17} J.B. testified that as she called 911 to report the medical emergency that led to S.M.'s death, Mr. Myers took her phone away from her and ended the call. She also testified that he restricted access to her phone and the phones of others present and prevented them from calling for assistance. This evidence, viewed in the light most favorable to the State, would reasonably permit a jury to conclude beyond a reasonable doubt that Mr. Myers violated R.C. 2909.04(A)(1).[2] Accordingly, his conviction for disrupting public services is not based on insufficient evidence.

**Manifest Weight of the Evidence**

{¶18} When considering whether a conviction is against the manifest weight of the evidence, this Court applies a different standard. *See State v. Martinez-Castro*, 9th Dist. Lorain No. 18CA011361, 2019-Ohio-1155, ¶ 14, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11-13. To evaluate the weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

---

[2] Mr. Myers has not articulated a legal argument regarding the applicability of R.C. 2909.04(A)(1) to the facts of this case. *Compare State v. Herring*, 8th Dist. Cuyahoga No. 104441, 2017-Ohio-743, ¶ 31-32 (Stewart, J., concurring in part and dissenting in part). This Court declines to construct such an argument on his behalf. *See State v. Upchurch*, 9th Dist. Medina No. 20CA0001-M, 2021-Ohio-94, ¶ 19, citing *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

{¶19}  In support of his argument that his convictions are against the manifest weight of the evidence, Mr. Myers maintains that J.B.'s testimony was not credible because she was under the influence of LSD on the evening in question.  J.B. acknowledged this to be the case, but she specifically denied that her memory was affected by her drug use.  In this respect, Mr. Myers' brief contains frequent, detailed references to J.B.'s experience with acid on the night of S.M.'s death.  Those descriptions, however, misrepresent J.B.'s testimony on this point, which consisted of a single statement: "[LSD] makes you see colors, that's why I was looking at the graffiti on the walls."  The presence of graffiti on the walls was, in fact, established through the testimony of the officer who responded to the scene.

{¶20}  Mr. Myers also appears to argue that his convictions for kidnapping and abduction are against the manifest weight of the evidence because J.B. was not restrained and her testimony was contradicted by other evidence in the record.  As noted above, J.B. testified that C.R. gave Mr. Myers a gun and that Mr. Myers brandished the gun for approximately ninety minutes while standing between J.B. and the front door to the apartment, thus preventing her egress.  For purposes of both R.C. 2905.01(A)(3) and R.C. 2905.02(A)(2), restraint can be accomplished by means of "force *or threat*." (Emphasis added.)  R.C. 2505.02(A).  *Accord*  R.C. 2905.01(A).  With respect to the content of her eventual 911 call made after she had fled the residence, J.B. explained that her priority at the time was to secure aid for S.M.

{¶21}  Two witnesses who testified on behalf of the defense denied that anyone's liberty had been restrained on the evening in question.  W.H.M., who along with J.B. provided a statement to police later in the day, claimed during his testimony that he did not remember anything related to the incident except that he was high.  Another witness testified that she was in the residence throughout the evening and did not recall seeing anyone with a gun.  T.O., who is C.R.'s sister and

the resident of the adjoining rental unit, also testified. She provided a ride to Mr. Myers and several other people after the incident, and T.O. testified that those individuals were emotional about S.M.'s demise, but did not display any fear. T.O stated that she was not present during the events at issue, however, and she specifically acknowledged that she did not know whether anyone had been held at gunpoint.

{¶22} On the other hand, the testimony of Officer Nate Koch, who responded to the scene and later interviewed J.B. and W.H.M., supported the details on J.B.'s testimony in some respects. Officer Koch identified a firearm that he found in an upstairs room at the residence, and J.B. later identified it as the weapon that Mr. Myers used. He also testified that during their interviews, both J.B. and W.H.M. appeared to be frightened. Detective Gaetano Bremenour, who assisted with the investigation, explained that it proved to be difficult to speak with any of the witnesses to the events.

{¶23} With respect to his conviction for having a weapon under disability, Mr. Myers argues that although C.R. handed him a gun, he "immediately placed the weapon on the table in the apartment[,]" indicating that he "immediately surrendered the weapon thus making a conscious effort and purpose to avoid having it." These assertions are not supported by any evidence in the record, however.

{¶24} This Court must "'consider[] the credibility of witnesses'" as part of our manifest weight review. *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175. Nonetheless, this Court is mindful of the well-established principle that a trier of fact enjoys the best position to assess the credibility of witnesses. *State v. Rivera*, 9th Dist. Lorain No. 18CA011263, 2019-Ohio-62, ¶ 39, quoting *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-

Ohio-3296, ¶ 15. Given the evidence in this case, this Court cannot conclude that this is the exceptional case in which the evidence weighs heavily against Mr. Myers' convictions.

**{¶25}** Mr. Myers' first assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 2

APPELLANT, JACOB MYERS, WAS DENIED HIS RIGHT TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE.

**{¶26}** Mr. Myers' second assignment of error argues that he did not receive effective assistance of counsel. Specifically, he has argued that Counsel failed to obtain records of text messages that would have assisted in his defense and failed to adequately communicate with him while his case was pending.

**{¶27}** In order to demonstrate ineffective assistance of counsel, a defendant must show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable possibility that the outcome of the trial would have been different. *Id*. at 694.

**{¶28}** In a direct appeal, ineffective assistance of counsel must be demonstrated by evidence within the record. *See generally State v. Madrigal*, 87 Ohio St.3d 378, 390-391 (2000). "'[A] claim of ineffective assistance of counsel on direct appeal cannot be premised on decisions of trial counsel that are not reflected in the record of proceedings * * * [and] [s]peculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance

of counsel.'" *State v. Zupancic*, 9th Dist. Wayne No. 12CA0065, 2013-Ohio-3072, ¶ 4, quoting *State v. Leyland*, 9th Dist. Summit Nos. 23833, 23900, 2008-Ohio-777, ¶ 7, citing *State v. Sweeten*, 9th Dist. Lorain No. 07CA009106, 2007-Ohio-6547, ¶ 10-12 and *State v. Downing*, 9th Dist. Summit No. 22012, 2004-Ohio-5952, ¶ 27.

**{¶29}** The record on appeal does not contain any information regarding the text messages at issue. The substance of those records is, itself, speculative. Any conclusions regarding the performance of trial counsel with respect to those calls would also be speculative and cannot form the basis of error on direct appeal. *See*, *e.g.*, *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, ¶ 69. *See also State v. Castagnola*, 9th Dist. Summit Nos. 29141, 29250, 2020-Ohio-1096, ¶ 27; *State v. Fridley*, 9th Dist. Wayne No. 17AP0029, 2019-Ohio-3412, ¶ 32. Similarly, "'a claim of lack of communication between a defendant and his trial counsel is not one that can be borne out by the record. It relies upon information necessarily outside the record, and is therefore not an issue we can review on direct appeal." *State v. Lawson*, 2d Dist. Greene No. 2020-CA-16, 2020-Ohio-6852, ¶ 106, quoting *State v. Watters*, 2d Dist. Clark No. 2015-CA-82, 2016-Ohio-8083, ¶ 27. *See also State v. Consilio*, 9th Dist. Summit No. 28409, 2017-Ohio-7913, ¶ 22.

**{¶30}** Mr. Myers' second assignment of error is overruled.

### III.

**{¶31}** Mr. Myers' assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.


APPEARANCES:

KIMBERLY STOUT-SHERRER, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and JONATHAN D. HAMERS, Assistant Prosecuting Attorney, for Appellee.